EDWARD T. KANE, Plaintiff-Appellant, v. DOCTORS HOSPITAL, Defendant-Appellee (Springfield Clinic *et al.*, Defendants).

Fourth District No. 4—98—0374

Argued October 21, 1998.—Opinion filed January 28, 1999.

Patrick M. Ouimet (argued), of Sarles & Ouimet, of Chicago, and Steven C. Ward, of Heckenkamp, Simhauser, Ward & Zerkle, of Springfield, for appellant.

Stephen R. Kaufmann and Michael T. Kokal (argued), both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 1996, plaintiff, Edward T. Kane, brought this medical malpractice action against defendants Doctors Hospital (the Hospital) and Dr. Sung-Ho Song, a radiologist who worked for the Hospital as an independent contractor. Kane alleged that in February 1992, Dr. Song committed malpractice while acting as the Hospital's apparent agent. In April 1998, following discovery, the trial court concluded that Dr. Song was not the Hospital's apparent agent as a matter of law and entered summary judgment for the Hospital. Kane appeals, arguing that the court erred because genuine issues of material fact exist as to whether Dr. Song was the Hospital's apparent agent. We reverse and remand.

## I. BACKGROUND

The following facts appear from the complaint, depositions, affidavits, and attached documents. Kane suffers from hemochromatosis—excessive iron in his blood—which can cause damage to various internal organs. At the time of the events giving rise to this litigation, Kane's condition had not been diagnosed despite his examination and treatment by numerous doctors in various branches of the medical arts.

In 1992, Kane was under the care of several doctors who were attempting to diagnose and treat his symptoms. Dr. Reddy, a psychiatrist, suggested electroconvulsive shock therapy because some of Kane's symptoms appeared psychosomatic. Unhappy with this possibility, Kane went to Dr. Juranek, one of his primary care physicians, and asked him to approve an abdominal computerized tomography (CT) scan to search for another cause for his continuing abdominal pain. Dr. Juranek was skeptical because Kane had previously undergone several CT scans, which were normal. Kane persuaded Dr. Juranek to order the procedure by suggesting that if this CT scan also came back normal, Kane would undergo any treatment Dr. Reddy suggested.

Dr. Juranek then scheduled the CT scan at the Hospital for the same day. Dr. Juranek did not discuss with Kane where the CT scan would be performed or why Dr. Juranek chose the Hospital.

Kane went to the Hospital's admissions office and signed two consent forms, neither of which indicated in any way whether physicians working at the Hospital were Hospital employees or independent contractors. A Hospital employee then led Kane to the radiology department, where he signed a third consent form. After Kane changed

his clothes, another technician escorted him to the CT suite, where he underwent the abdominal CT scan. Dr. Song read the CT scan film and concluded Kane's abdomen was normal. Dr. Song sent a report containing his conclusion to Dr. Juranek on stationery bearing the Hospital's logo.

Kane stated in his deposition that prior to the CT scan, he did nothing to determine whether the radiologist who was going to read his scan film was the Hospital's employee or agent. He also did not notice any signs in the radiology department disclosing the radiologists' relationship with the Hospital. Kane had no conversation with Dr. Song and did not recall ever seeing him.

During his deposition, Kane testified about his general knowledge of business relationships in the medical care industry. From 1983 to 1990, he worked as a sales representative for American Hospital Supply, which was later absorbed by Baxter Healthline. In that capacity, Kane spent 95% or more of his time selling supplies to hospitals and surgeons. The Hospital's attorney questioned Kane about the understanding he acquired of surgeons' business relations with hospitals and elicited the following testimony from Kane:

"Q. [Hospital's attorney:] All right. When Baxter was American, for that five per cent of your business, when you were selling directly to surgeons, did you have an understanding at that time that those surgeons were not necessarily employees of the hospital?

A. Yes.

Q. In some cases, those surgeons probably had professional corporations set up?

A. Yes.

Q. Or were members of a partnership or some other legal entity, correct?

A. I am not aware of any specifics. I'm just agreeing with you that it's possible."

However, Kane also testified that he never sold supplies to radiologists, and he stated that he did not know any radiologists socially.

As it turns out, Dr. Song is an employee of Imaging Radiologists, a corporation that had a contractual arrangement with the Hospital to provide 24-hour radiological services. When questioned about his knowledge of Dr. Song's employment with Imaging Radiologists, Kane gave the following testimony:

"Q. Do you know where the office of Imaging Radiologists is located?

A. No.

Q. Do you know where the office of Imaging Radiologists, whether Imaging Radiologists has an office within the confines of Doctors Hospital?

A. No, I don't.

Q. Do you know whether Dr. Song is affiliated in some capacity with Imaging Radiologists?

A. I believe that he is.

Q. In what capacity, if you know?

A. I believe that he's a, that he is an employee of, that he's paid by Imaging Radiologists. That they bill for him."

In April 1998, the trial court entered summary judgment for the Hospital, after determining that, as a matter of law, Dr. Song was not an apparent agent of the Hospital. This appeal followed.

## II. ANALYSIS

Kane argues that the trial court erred by granting summary judgment in the Hospital's favor because genuine issues of material fact exist as to whether Dr. Song was the Hospital's apparent agent. In response, the Hospital argues that the trial court correctly granted its motion for summary judgment because the record established that (1) Kane knew Dr. Song was not the Hospital's employee; (2) neither the Hospital nor Dr. Song made any representations to Kane that Dr. Song was an agent of the Hospital; (3) Kane did not act reasonably in ascertaining Dr. Song's employment status; and (4) Kane did not rely on any representations by the Hospital when he sought radiological treatment. We agree with Kane's argument.

 Orders granting summary judgment are subject to *de novo* review, and that standard governs our resolution of the present appeal. *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524, 702 N.E.2d 535, 537 (1998). The parties agree that the outcome of this case is governed by the supreme court's decision in *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 622 N.E.2d 788 (1993). In *Gilbert*, the supreme court held that a hospital may be vicariously liable on an apparent or ostensible principal-agent relationship between the hospital and physician. Specifically, the court held as follows:

"[U]nder the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital, regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor." *Gilbert*, 156 Ill. 2d at 524, 622 N.E.2d at 795.

The *Gilbert* court then reviewed the elements of a cause of action based upon apparent agency in a hospital setting, as follows:

" 'For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or

agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' *Pamperin [v. Trinity Memorial Hospital]*, 144 Wis. 2d [188,] 207-08, 423 N.W.2d [848,] 855-56 [(1988)]." *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 795.

The supreme court also observed that all of the following are questions of fact: whether (1) an agent is authorized to act; (2) a plaintiff has notice of a lack of an agent's authority; or (3) a plaintiff is put on notice by circumstances. *Gilbert*, 156 Ill. 2d at 524, 622 N.E.2d at 795.

Discussing the type of proof sufficient to prove the elements of a cause of action based upon apparent agency in a hospital setting, the court stated the following:

"The element of 'holding out' on the part of the hospital does not require an express representation by the hospital that the person alleged to be negligent is an employee. Rather, the element is satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors. [Citation.]

The element of justifiable reliance on the part of the plaintiff is satisfied if the plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician. The *Pamperin* court explained:

'We agree with these decisions that the critical distinction is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is looking to the hospital merely as a place for his or her personal physician to provide medical care. Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care—from blood testing to radiological readings to the endless medical support services—will be provided by the hospital through its staff.' [Citation.]" *Gilbert*, 156 Ill. 2d at 525-26, 622 N.E.2d at 796.

In sum, the supreme court in *Gilbert* concluded as follows:

"We stress that liability attaches to the hospital only where the treating physician is the apparent or ostensible agent of the hospital. If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." *Gilbert*, 156 Ill. 2d at 522, 622 N.E.2d at 794.

## A. Kane's Knowledge of Dr. Song's Status

The Hospital first claims that Kane's deposition testimony and his employment as a sales representative to hospitals and physicians demonstrate that he knew Dr. Song was an independent contractor. We disagree.

■ Kane's deposition testimony is, at best, ambiguous. He acknowledged that he was aware Dr. Song was an employee of Imaging Radiologists. However, the Hospital never asked Kane when he became aware of that fact. That he possessed this information at the time of his deposition—which occurred several years after his CT scan at the Hospital—is unremarkable and says nothing about whether he knew that Dr. Song was an employee of Imaging Radiologists when he underwent the CT scan. Likewise, the fact that Kane was billed for the radiological services by Imaging Radiologists *after* he underwent the CT scan does not demonstrate the extent of his knowledge at the time the services were rendered. Moreover, in his complaint, Kane stated that (1) he assumed the radiologist who would perform and read his CT scan was part of the Hospital's staff; and (2) he did not know whether Dr. Song was the Hospital's employee or an independent contractor. Finally, Kane testified that he made no inquiry prior to the treatment regarding Dr. Song's status. Thus, a genuine issue of material fact exists as to whether Kane was aware that Dr. Song was an independent contractor at the time Kane underwent the CT scan.

Kane's additional testimony that he was aware physicians were not necessarily employees of hospitals says nothing about the actual state of his knowledge regarding Dr. Song's business relationship with the Hospital, especially in view of the fact Kane never sold medical supplies to radiologists. While a question may exist as to whether Kane should have known that Dr. Song in particular or radiologists in general work as independent contractors, this is a question of fact for a jury to determine.

## B. The Hospital's Representations to Kane

■ The Hospital next contends that no evidence shows that either it or Dr. Song affirmatively represented to Kane that Dr. Song was the Hospital's agent or employee. Under *Gilbert*, however, the element of "holding out" on the part of the hospital "does not require an express representation by the hospital that the person alleged to be negligent is an employee." *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 796. Rather, this element is satisfied if the hospital holds itself out as a "provider of *** care without informing the patient that the care is provided by independent contractors." *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 796. The evidence in this case shows the Hospital did not advise Kane

one way or another as to Dr. Song's status. Under *Gilbert*, silence is sufficient for liability to attach.

## C. Kane's Failure To Ascertain Dr. Song's Relationship With the Hospital

■ The Hospital's next contention, that Kane did not take any action that would lead a reasonable person to believe that Dr. Song was affiliated with the Hospital, is also misplaced. Under *Gilbert*, no requirement exists that a plaintiff must make a direct inquiry into the status of physicians working in a hospital. Instead, the burden is on hospitals to put their patients on notice of the independent status of the professionals with whom the patients might be expected to come in contact. *Gilbert*, 156 Ill. 2d at 521, 622 N.E.2d at 794.

## D. Kane's Lack of Reliance on His Belief That Dr. Song Was the Hospital's Employee

■ Last, the Hospital contends that because Dr. Juranek scheduled the CT scan and picked the Hospital without Kane's input, Kane did not choose the Hospital; therefore, he could not have relied on any representations from the Hospital or Dr. Song because the decision to choose the Hospital was taken out of Kane's hands. Nothing in *Gilbert*, however, suggests a plaintiff must make an independent determination of whether to rely on a particular hospital for treatment. As the court held in *Monti v. Silver Cross Hospital*, 262 Ill. App. 3d 503, 507-08, 637 N.E.2d 427, 430 (1994), a patient may rely on others to choose a particular medical facility for treatment. In this case, Kane relied on Dr. Juranek to set up treatment he desperately wanted. That is sufficient.

On the record before us, we conclude that genuine issues of material fact exist as to whether Kane knew or should have known Dr. Song was an independent contractor at the time the medical services were rendered. For this reason, we conclude that the trial court erred by granting summary judgment in the Hospital's favor.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

Reversed and remanded.

KNECHT, P.J., and GARMAN, J., concur.