FIRST DIVISION

February 7, 2000

No. 1-98-2899

RONALD R. BUTKIEWICZ, Special Adm'r of the Estate of Robert Butkiewicz, Deceased,

Plaintiff-Appellant,

v.

LOYOLA UNIVERSITY MEDICAL CENTER, a not-

for-profit Illinois Corporation, DR. JAMES STANKIEWICZ, M.D., LITTLE COMPANY OF MARY HOSPITAL AND HEALTHCARE CENTER, an Illinois not-for-profit corporation, RADIOLOGY IMAGING SPECIALISTS, LTD., an Illinois corporation, DR., IRVING FULD, M.D., DR. SHEILAH M. O'CONNOR, M.D., DR. ROY RAMSEY, M.D., DR. SHIVAJI BASU, M.D., DR. JOHN G. KELSEY, M.D., EVANGELICAL HOSPITALS CORPORATION, an Illinois not-for-profit corporation d/b/a EHS CHRIST HOSPITAL AND MEDICAL CENTER, and DR. WILLIAM RAMANAUSKAS, M.D.,  

Defendants-Appellees.

))

))

))

))

))

))

))

))

))

))

))

Appeal from the

Circuit Court of

Cook County

Honorable

Michael J. Hogan, 

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Ronald R. Butkiewicz (plaintiff), as special administrator of the estate of Robert Butkiewicz (Mr. Butkiewicz), deceased, filed a wrongful death and survival action alleging medical malpractice against EHS Christ Hospital and Medical Center (Christ Hospital) and Dr. William Ramanauskas for failure to diagnose Mr. Butkiewicz' lung cancer.  Finding that plaintiff failed to prove the reliance element of apparent agency, the trial court granted summary judgment to Christ Hospital.  Plaintiff appeals pursuant to Supreme Court Rule 304(a) (134 Ill. 2d 304(a)) and argues that the trial court erred in granting Christ Hospital's motion for summary judgment because there was sufficient evidence to present a genuine issue of material fact regarding the apparent agency relationship between Christ Hospital and hospital staff radiologist Dr. Ramanauskas.  We affirm.

After open heart surgery in 1979, Mr. Butkiewicz started seeing his cardiologist, Dr. Shivarji Basu, as his regular internist.  Mr. Butkiewicz saw Dr. Basu once a month for his heart condition and on an as-needed basis for any other ailments.  Mr. Butkiewicz liked and respected Dr. Basu.  Mr. Butkiewicz' family testified that he held Dr. Basu in such high regard that he would follow Dr. Basu's recommendations religiously.  Over the years, on Dr. Basu's recommendation and based on where Dr. Basu had staff privileges, Mr. Butkiewicz had obtained medical care and X rays at Mercy Hospital, Little Company of Mary Hospital, Loyola Hospital, South Suburban Hospital, and Christ Hospital.

In 1991, Mr. Butkiewicz started to suffer from chest pains and coughing fits, and, on occasion, he coughed up blood.  On July 17, 1992, Mr. Butkiewicz began experiencing severe stomach and chest pains.  He called Dr. Basu, who ordered him to go to the emergency room at Christ Hospital, where Dr. Basu was on staff.  Mr. Butkiewicz was admitted to the coronary care unit at Christ Hospital on July 18, 1992, under Dr. Basu's care.  Dr. Basu ordered an X ray of Mr. Butkiewicz' chest on July 21, 1992.  Hospital staff radiologist Dr. Ramanauskas, who was employed by Oak Lawn Radiologists, interpreted the X rays.  He wrote up a report stating that no infiltrates were noted in Mr. Butkiewicz' lungs and sent the report to Dr. Basu.  Dr. Basu reported the results to Mr. Butkiewicz and his family as being "fine."

  Mr. Butkiewicz' pain and coughing symptoms continued and he was finally diagnosed with lung cancer in November 1994 by Dr. Bugno of Little Company of Mary Hospital.  Dr. Bugno noted that the mass had been present for 2½ to 3½ years prior to diagnosis.  After the diagnosis, Mr. Butkiewicz' family took his X rays to thoracic surgeon Dr. Faber at Rush-Presbyterian-St. Luke's Hospital.  Dr. Faber advised the family that the tumor had existed for at least five years, that it was too extensive to operate on, and that Mr. Butkiewicz would definitely lose his entire lung and could not survive.  

 Dr. Yario, a surgeon at Little Company of Mary Hospital, also reviewed Mr. Butkiewicz' X rays and reports.  He agreed with Dr. Faber that the tumor had been present for many years and was very serious.  Dr. Yario did, however, agree to do the surgery.  Mr. Butkiewicz underwent surgery on December 13, 1994, but died on December 21, 1994.  Dr. Yario had removed a 16-inch tumor from Mr. Butkiewicz' lungs and described it as being two to three years old.  If the tumor had been diagnosed two or three years earlier, Mr. Butkiewicz' prognosis would have been very good.

On March 25, 1996, plaintiff filed a two-count first amended complaint against Christ Hospital, among other defendants, alleging medical malpractice for failure to diagnose Mr. Butkiewicz' lung cancer.  On November 6, 1997, Christ Hospital filed a motion for summary judgment asserting that Dr. Ramanauskas was not an employee of the hospital, that the case against the hospital was based upon the doctrine of apparent agency for the actions of Dr. Ramanauskas, and that plaintiff could not establish any of the elements of apparent agency.  Plaintiff admitted in his response to the motion for summary judgment that Christ Hospital's only potential liability would be due to the conduct of Dr. Ramanauskas under an apparent agency theory.  

The trial court held a hearing on the motion for summary judgment on June 25, 1998.  On July 7, 1998, the trial court granted the motion for summary judgment.  The court found that, as a matter of law, "Plaintiff did not rely on Defendant Christ Hospital but rather relied on Dr. Basu.  Plaintiff has not submitted any evidence he relied on defendant Christ Hospital.  Therefore, Plaintiff cannot satisfy the reliance element of apparent agency."  On July 8, 1998, the trial court entered an additional order finding the order of July 7 final and appealable pursuant to Rule 304(a).

Our review of a grant of summary judgment is 
de novo
.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).  Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(c) (West 1994).  An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists.  
Addison v. Whittenberg
, 124 Ill. 2d 287, 294, 529 N.E.2d 552 (1988).  Plaintiff argues that questions of fact exist as to Christ Hospital's vicarious liability for Dr. Ramanauskas' failure to diagnose Mr. Butkiewicz' lung cancer.  We disagree.

The doctrine of apparent agency provides that a principal will be bound by both the authority that he actually gives another and the authority he appears to give to another.  
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d 511, 523, 622 N.E.2d 788, 795 (1993).  Under the doctrine of apparent agency, a hospital may be held vicariously liable for the negligent acts of a staff physician, regardless of whether that physician is, as here, an independent contractor, unless the patient knows or should have known that the physician was an independent contractor.  
Gilbert
, 156 Ill. 2d at 524, 622 N.E.2d at 795.  In order to succeed on such a claim, the plaintiff must prove that: 

"'(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.'"   
Gilbert
, 156 Ill. 2d at 525, 622 N.E.2d at 795, quoting 
Pamperin v. Trinity Memorial Hospital
, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 856 (1988).  

The doctrine of apparent agency as stated in 
Gilbert
 is not limited to emergency room situations.  
Malanowski v. Jabamoni
, 293 Ill. App. 3d 720, 727, 688 N.E.2d 732, 737 (1997).  

There is no question that plaintiff has proven the first two elements of apparent agency.  The evidence showed that Dr. Ramanauskas was a radiologist employed by Oak Lawn Radiologists, a private group medical practice.  Pursuant to a contract with Christ Hospital, Oak Lawn Radiologists provided the doctors for the hospital's radiology department.  Oak Lawn Radiologists used 10,000 square feet of space within the hospital for the radiology department but did not lease or pay rent on that space.  All of the equipment in the radiology department was owned by the hospital.  Oak Lawn Radiologists did not lease or pay rent on the equipment.  Although not an employee of the hospital, Dr. Ramanauskas was a member of Christ Hospital's medical staff with full privileges, was medical director of MRI services in the department of diagnostic radiology, taught at the hospital, and served on the quality assurance committee in the department of diagnostic radiology.  

The first relevant inquiry under 
Gilbert
 is whether Mr. Butkiewicz knew that Dr. Ramanauskas was not employed by the hospital.   
James v. Ingalls Memorial Hospital
, 299 Ill. App. 3d 627, 631, 701 N.E.2d 207, 209 (1998); 
Dahan v. UHS of Bethesda, Inc.
, 295 Ill. App. 3d 770, 776, 692 N.E.2d 1303, 1308 (1998).  Nothing would have alerted Mr. Butkiewicz to the fact that Dr. Ramanauskas was not a hospital employee.  Dr. Ramanauskas' only office address was at Christ Hospital Medical Center.  Any reports he authored were on hospital letterhead under the heading "Department of Diagnostic Radiology."  "Oak Lawn Radiologists" did not appear on any reports from the radiology department.  The hospital did not inform its patients that the hospital's radiologists were not hospital employees.  There was no written notice on admittance or consent forms that the doctors were not hospital employees nor were signs to that effect posted on the hospital property.  As in 
Gilbert
, the hospital here did not expressly represent that Dr. Ramanauskas was an employee.  Rather, it neglected to inform Mr. Butkiewicz that Dr. Ramanauskas was not.  Mr. Butkiewicz could have reasonably concluded that Dr. Ramanauskas was the employee or agent of Christ Hospital and the hospital did nothing to inform him otherwise.

However, as the trial court correctly found, plaintiff failed to provide evidence sufficient to satisfy the third element of the doctrine of apparent agency: justifiable reliance by Mr. Butkiewicz on the hospital.  "[I]f a principal creates the appearance that someone is his agent, he should not then be permitted to deny the agency if an innocent third party reasonably relies on the apparent agency and is harmed as a result."  
O'Banner v. McDonald's Corp.
, 173 Ill. 2d 208, 213, 670 N.E.2d 632, 634 (1996), citing 
Gilbert
, 156 Ill. 2d at 523-24, 622 N.E.2d at 795.  Plaintiff must show that Mr. Butkiewicz actually did rely on the apparent agency in going to the hospital.  
O'Banner
, 173 Ill. 2d at 213, 670 N.E.2d at 635.  As the 
Pamperin
 court, as quoted in 
Gilbert
, explained:

"'[T]he critical distinction is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is looking to the hospital merely as a place for his or her personal physician to provide medical care.  Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself.  An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care--from blood testing to radiological readings to the endless medical support services--will be provided by the hospital through its staff.'"  
Gilbert
, 156 Ill. 2d at 525-26
, 
622 N.E.2d at 796,  quoting
 Pamperin
, 144 Wis. 2d at 211-12, 423 N.W.2d at 857
.

Plaintiff has failed to show that Mr. Butkiewicz actually relied on any representations of the hospital or Dr. Ramanauskas in going to Christ Hospital.  It is uncontradicted that Mr. Butkiewicz went to Christ Hospital because Dr. Basu told him to go there.  Mr. Butkiewicz' family testified that Mr. Butkiewicz trusted Dr. Basu completely and would do whatever he told him to do.  As plaintiff himself testified: "If Basu said something, my dad did it."  The following exchange between plaintiff and one of the codefendants' counsel illustrates this clearly:

"Q. It's fair to say whatever doctor or hospital Dr. Basu told your father to go to he would?

A. Absolutely.

Q. For example, if Dr. Basu told your father to go to Little Company [of Mary Hospital], told him to go to Mercy [Hospital], told him to go to South Suburban [Hospital]

A. Christ, yes.

Q. ... your father would follow, go wherever Dr. Basu told him to go?

A. That's correct.

***

A. Whatever hospital he ended up with it was recommendation of Basu, you know."

Mr. Butkiewicz' other son, Michael Butkiewicz, testified similarly:

"Q. Your father pretty much would go to whatever hospital or whatever physician Dr. Basu would send him to?

A. Correct.

Q. And he would go for x-rays wherever – I'm sorry, your father would go for x-rays wherever Dr. Basu would send him.

A. If Dr. Basu says jump, my dad would say how high.

Q. So the answer to my question is yes?

A. Yes."

Mr. Butkiewicz' wife and daughter also testified that he would go to whatever hospital Dr. Basu recommended.  Both testified that it was more important to Mr. Butkiewicz that he be treated by Dr. Basu than to which hospital he went.  Linda Butkiewicz testified that if Dr. Basu told her father to go to Christ Hospital, that is what her father would do and if "he told him to take half a bottle of sleeping pills, that's what he'd do."  Mr. Butkiewicz' faith in Dr. Basu is illustrated by the following colloquy between Mrs. Butkiewicz and counsel for the hospital:

"Q. And at the time you were admitted or your husband was admitted to Christ Hospital, again, that didn't matter to you that it was Christ Hospital, as long as Dr. Basu recommended it for you, it was good enough for your husband, is that correct?

A. I tell you, my husband didn't like Christ.

Q. Okay.

A. No, he did not want to go back there.

Q. So he followed Dr. Basu's recommendations.

A. Oh, yes."

Clearly, despite the fact the he did not like Christ Hospital, Mr. Butkiewicz chose to go there because his trusted physician told him to do so.  Mr. Butkiewicz did not go to Christ Hospital because he believed it to be a fine hospital.  Quite the contrary.  He did not go there seeking care from the hospital itself.  He went because that is where his doctor had staff privileges and told him to go.  Mr. Butkiewicz was not relying on the hospital's representations about the excellence of its care and the quality of its physicians; he was relying on Dr. Basu.  As with the patient in 
James
, it made no difference to Mr. Butkiewicz whether Dr. Ramanauskas was a hospital employee or not.  Plaintiff did not meet his burden in establishing the reliance element of apparent agency.  
James
, 299 Ill. App. 3d at 634-35, 701 N.E.2d at 211-12.

The fourth district, in a case similar to the one at bar,
 
stated that "[n]othing in 
Gilbert,
 however, suggests a plaintiff must make an independent determination of whether to rely on a particular hospital for treatment." 
 Kane v. Doctors Hospital
, 302 Ill. App. 3d 755, 762, 706 N.E.2d 71, 76 (1999).  In 
Kane
, the plaintiff's doctor picked the hospital without the plaintiff's input.  The hospital therefore argued that, because the plaintiff did not choose the hospital, he could not have relied on any representations from the hospital or the hospital's agent doctor.  The 
Kane
 court, relying on 
Monti v. Silver Cross Hospital
, 262 Ill. App. 3d 503, 637 N.E.2d 427 (1994), found that "a patient may rely on others to choose a particular medical facility for treatment.  In this case, [the patient] relied on [his doctor] to set up treatment he desperately wanted.  That is sufficient."  
Kane
, 302 Ill. App. 3d at 762, 706 N.E.2d at 76.  We disagree.  We believe the 
Kane
 court misapplies the 
Monti
 decision. 

In 
Monti
, the patient was unconscious after being thrown from a horse.  She could not have made an independent decision of which hospital to attend.  The 
Monti
 court determined that the people responsible for her care, the paramedics and her husband, relied on the hospital to provide complete emergency care for her.  As the 
Monti
 court stated, "[t]hose responsible for [the patient] sought care from the hospital, not from a personal physician, and thus, a jury could find that they relied upon the fact that complete emergency room care would be provided through the hospital staff."  
Monti
, 262 Ill. App. 3d at 508, 637 N.E. 2d at 430.  Finding that to hold otherwise would allow conscious patients to recover on a theory of vicarious liability but not unconscious patients, the 
Monti
 court found the same to be true for all seriously ill or badly injured patients who came to an emergency room for care.  The 
Monti
 finding applies in situations where the patient is unable to make a decision for himself.  Such was not the case in 
Kane
 and such is not the case here
.  Mr. Butkiewicz was fully conscious and able to make his own determination as to which hospital to attend.  He chose to rely on Dr. Basu.

For the reasons stated above, we affirm the trial court's grant of summary judgment to Christ Hospital.

Affirmed. 

O'MARA FROSSARD, P.J., and RAKOWSKI, J., concur.