2026 IL App (1st) 251103-U

FIFTH DIVISION
January 23, 2026

No. 1-25-1103

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ZAHER SAMMAK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | 2025 L 005616 |
| | ) | 2021 L 012827 |
| ZURICH AMERICAN INSURANCE COMPANY & | ) | |
| US PACK PARTS II, LLC, | ) | The Honorable |
| | ) | Jerry A. Esrig, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The judgment of the circuit court is affirmed. The circuit court did not abuse its discretion when it refused to admit evidence, and it properly granted summary judgment to defendant.

¶ 2                                    I. BACKGROUND

¶ 3     On September 11, 2015, Zaher Sammak (Sammak) entered into an independent contractor agreement with US Pack Parts II, LLC (US Pack), formerly known as Partsfleet, to provide transportation services. The agreement states, "contractor represents that [he] understands and

agrees that [he] will perform services under this Agreement as an <u>independent contractor</u>, not an employee." (Emphasis in original.) The agreement contained an arbitration clause, as well as a requirement that Sammak obtain either workers' compensation insurance or occupational accident insurance.

¶ 4    Sammak obtained a "Truckers Occupational Accident Insurance" policy through Zurich American Insurance Company (Zurich). Pertinent to this case, the policy certificate states, "important notice. This is not a workers' compensation policy and is not a substitute for workers' compensation coverage. **** This certificate is not workers' compensation and does not require pre-authorization of a physician for covered services or treatment. You may consult us *** to determine if a service or treatment is covered."

¶ 5    The policy includes a medical expense benefit and temporary total disability (TTD) benefit for a maximum of 104 weeks, or two years. The policy covers all medically necessary services, which are defined as those "essential for diagnosis, treatment or care of the Injury for which it is prescribed or performed" that "meet[] generally accepted standards of medical practice" that are "ordered by a Physician and performed under his or her care, supervision or order." "Medically necessary services" include "repair or replacement of Sound Natural Teeth damaged or lost as a result of Injury, up to the Dental Benefit Maximum, if any, shown in the Schedule." "Sound natural teeth" are defined as "natural teeth that are unaltered or are fully restored to their normal function and are disease free, have no decay, and are not more susceptible to injury than unaltered natural teeth."

¶ 6    Sammak was in a work-related motor vehicle accident on December 23, 2019, and sustained injuries. He filed a claim on his insurance policy with Zurich on January 21, 2020.

¶ 7      On February 28, 2020, Sammak filled out an Occupational Accident Proof of Loss form. When asked to "[l]ist all injuries sustained" in the December 23, 2019, accident, he wrote, "left wrist, left shoulder, neck, lower back, forgetfulness, headaches, dizzy, double vision comes and goes."

¶ 8      On December 22, 2021, Sammak filed a complaint against Zurich and US Pack. Against Zurich, he brought a breach of contract claim, alleging that it breached the terms of his insurance policy by, among other bases, denying him coverage for certain medical expenses, and an intentional infliction of emotional distress claim. Against both Zurich and US Pack, Sammak brought claims for fraud, deceptive business practices, and civil conspiracy.

¶ 9      On July 11, 2022, US Pack filed a motion to compel arbitration based on the arbitration clause in its agreement with Sammak. The court granted US Pack's motion, ordered Sammak to submit all claims against US Pack to binding arbitration, and then stayed the matter in its entirety pending the outcome of arbitration.

¶ 10     Zurich filed a partial motion to dismiss the fraud, intentional infliction of emotional distress, civil conspiracy, and deceptive practices counts against it. The court granted Zurich's motion, leaving only the breach of contract claim pending against it.

¶ 11     In his deposition, Sammak said he started working for US Pack in 2015. When he was asked what injuries he sustained in the December 23, 2019, accident, he said "Neck, left shoulder. Wrist, had bruises all over legs, I was unconscious." He said he "couldn't feel nothing in [his] face" and then "found out all my teeth is loose, you know, start losing everywhere." When he was asked if he ever told Zurich about his teeth being loose, he said yes. He said he talked to Robert McDonald on the phone about his dental injuries and sent a dental receipt from Turkey to McDonald in August of 2021. When Sammak was asked if he ever told independent medical

examiner Dr. Troy about any injuries to his teeth, Sammak replied, "Well, he seen it[.]" Sammak said he "told [Dr. Troy] about [his] teeth but he has nothing to do with the teeth." When Sammak was shown the Occupational Accident Proof of Loss form he filled out on February 28, 2020, which asked him to list all injuries he received, he admitted he did not list any injuries to his teeth there, saying, "I never wrote it but you see how I talk." He said, "everybody notice[d] it without [me] even telling anybody."

¶ 12 Sammak said doctors recommended surgery for his neck, hand, and lower back, but he decided not to have those surgeries because he was homeless after his December 23, 2019, accident and "didn't have [any] place to sleep after the operation."

¶ 13 Robert McDonald was deposed on March 30, 2023. He testified that he had worked as a claims adjuster for Zurich for about 15 years. He said all mail, facsimiles and emails sent to Zurich go directly to Zurich's home office and are scanned into Zurich's electronic system. McDonald said that when he receives phone calls from claimants, he goes into Zurich's electronic system and records a typed entry of every phone call he receives. When asked if it was possible that he forgot to record a call, he said no. Sammak's claim was handled by several different claims adjusters over the years, but McDonald reviewed all the documents within Sammak's electronic claim file as well as the notes recorded by all claim handlers before his deposition. McDonald noted that when Sammak was asked to "list all injuries sustained" in his December 23, 2019, accident on the "Occupational Accident Proof of Loss" form, no dental injury was reported. McDonald also noted that on February 13, 2020, when Sammak described his injuries to Sherry Pazda, the Zurich representative who was handling Sammak's case at the time, Sammak stated "Fracture L arm, Strain shoulder, Strain neck and back, Con[tusions]." No dental injuries were reported to Pazda. When McDonald was asked if Sammak ever reported any dental injuries to him, he said he never

4

discussed anything about dental injuries with Sammak and "d[id]n 't remember receiving any documents for dental." When he was presented with a document from a medical facility in Istanbul, Turkey known as "Fix Hair  Skin Hair & Body Clinic" (Istanbul Clinic), he said he had never seen it before, and noted that it was not part of Sammak's claim file. McDonald said there was not a single note in Sammak's electronic claim file reflecting any oral communication from Sammak or his representative about a dental injury or dental treatment related to the December 23, 2019, accident. McDonald said the only dental-related invoice found in Sammak's claim file was an invoice from Dr. Sanford Barr, which was dated October 19, 2021. McDonald responded to Dr. Barr on November 11, 2021, stating, "we are sorry we are unable to accept billing statements as they do not contain all the information required to process the bill. **** Please also submit medical records." Because Dr. Barr never responded to Zurich's request for additional information, Zurich did not process the invoice.

¶ 14    McDonald also said that he did not make any decisions to approve or deny medical providers' bills regarding Sammak's claim, and that Sammak and his attorney were informed that "[t]here is no pre-certification or authorization necessary for treatment under this plan. It will cover treatment that is medically necessary and related to Mr. Zaher Sammak's injury of 12-23-2019. [Zurich] do[es] not direct any medical treatment or authorize medical treatment. As long as Mr. Sammak is treating for injuries related to the [accident] it is covered under the Occupational Accident Policy."

¶ 15    An affidavit from Thomas Brinck, Team Manager for Zurich, dated September 1, 2023, stated that Brinck had personal knowledge of the claims handlers who had been assigned to Sammak's case over the years, including Robert McDonald, Sherry Pazda, Leslie Veit, and Michael Alexandrowicz. Pazda handled Sammak's case from January 2020 through April 2020,

Veit handled the case from April through October 2020, McDonald handled the case from October 2020 through January 2021 and April 2021 through January 2022, and Alexandrowicz handled the case from January through April of 2021. Brinck also said he has personal knowledge regarding the procedures used by claims adjusters to record information in Zurich's electronic system. He stated, "it is the policy of Zurich that claims adjusters record all communications associated with any claim in the electronic notes in the electronic claim file" and that "all documents associated with any claim are stored in the electronic claims file."

¶ 16    On September 1, 2023, Zurich moved for summary judgment, arguing that Sammak could not factually support his claim for breach of contract and prove that 1) Zurich failed to pay medical invoices he submitted or that 2) Zurich owes him additional treatment under the policy. First, Zurich noted that the only unpaid invoices allegedly submitted to Zurich during the medical benefits period were invoices for dental work, and argued that Sammak submitted "zero evidence" to show that these invoices were for medically necessary services arising out of the December 23, 2019, accident. Next, Zurich argued that nothing in the record supported a finding that Zurich owed payment for additional treatment to Sammak, because according to the terms of Sammak's insurance policy, any treatment must have been received during the maximum benefit period, which ended on December 20, 2021.

¶ 17    Dr. Sanford Barr was deposed on September 6, 2023. He testified that he saw Sammak one time, on October 19, 2021, and that when Sammak came to see him "he had no teeth. And this was the first that I had seen him, but he had implant fixtures, which are the screws that go into the jaw in preparation for an implant-supported prosthesis." Dr. Barr said Sammak "told [him] that he was in a car accident" that caused him to lose his teeth but "[t]hat's the extent [Barr] knew about anything in the past." Dr. Barr did an evaluation of Sammak's mouth, took X-rays, and recorded

his findings, writing that Sammak "[w]as in a car accident and subsequently lost teeth. Had implants/fixtures placed in Turkey."

¶ 18    Dr. Barr said he had never seen any other dental records for Sammak before he saw him, so he had "no idea what [Sammak's] mouth looked like prior to the date that [he] saw him" and he had "no way of knowing" what caused Sammak to lose all his teeth or to get the implants before coming to see him. Dr. Barr noted that on the patient information forms Sammak filled out prior to his visit, he indicated that he suffered from gum disease, diabetes, and high blood pressure. Dr. Barr said that while some people lose their teeth because of trauma, others lose their teeth due to bad dental hygiene, illness, smoking, and gum disease. Although Dr. Barr said it was possible that the December 23, 2019, accident caused injury to Sammak's teeth, he could not say what caused Sammak's teeth to fall out because "[o]nce the teeth are gone and it's been six months, there's no way that I can give you an exact cause of it with certainty."

¶ 19    In his five-page response to Zurich's motion for summary judgment, Sammak argued that Zurich "unreasonably refused to give assurances to various medical providers that bills *** would be paid" and that although he tendered a bill from Dr. Sanford Barr and informed Zurich that he had "paid for related dental services by a dentist in Turkey" and demanded reimbursement, Zurich ignored the bills and failed to pay them. For support, Sammak attached an email from his attorney to Zurich, dated September 29, 2021, that says, "I previously sent you bills from a dentist in Turkey who was paid by the claimant. Accordingly we are demanding Zurich to reimburse claimant for this expense." A copy of the bill from the dentist in Turkey was not attached to the email. Sammak also attached a document from the Istanbul Clinic, dated June 29, 2021. The document is titled, "The contract of Mr. Zaher H Sammak" and says,

7

"[a]fter the examination of Mr. Zaher by the doctor Muhannad Al-Mulla and seeing the x-rays, it was found that he needed to extract all the teeth because of their fracture, weakness and exit from the jawbone and the reason was the result of the traffic accident he suffered on December 23, 2019. We did the operation on 6/26/2021 in our hospital. The teeth were in a very bad condition due to the accident, and some teeth fell out immediately when the accident occurred and the jawbone was damaged as a result of the collision. Mr. Zaher was given a receipt in the amount of $6,500, as a down payment of the total amount of $10,000 in full."

According to the document, on June 26, 2021, Sammak had 12 implant fixtures placed, six in his upper jaw and six in his lower jaw; an imprint was taken of his mouth to fit temporary prosthetic teeth; and he was to return in six months to have 24 German zirconia crowns placed on the implant fixtures.

¶ 20　In its reply in further support of its motion for summary judgment, Zurich argued that Sammak submitted "no evidence" to show that the dental invoice from Turkey was ever submitted to Zurich during the maximum benefits period, and that even if the invoice had been received by Zurich during the maximum benefits period, Sammak submitted no evidence to prove that the dental invoices from Turkey and Dr. Barr were for medically necessary services. Zurich noted that Sammak had disclosed Dr. Barr as his "sole witness to prove his claims of coverage for dental injury arising from the Accident." However, Dr. Barr confirmed in his deposition that he did not know what caused Sammak to lose all his teeth.

¶ 21　On January 11, 2024, Sammak filed a supplemental affidavit, stating he "had no dentures and no artificial teeth" before the accident on December 23, 2019, and that he "had all natural

teeth." He attached a photograph of himself and wrote, "[t]his photograph truly and accurately shows my natural teeth on and prior to the date of the accident."

¶ 22     A hearing on Zurich's motion for summary judgment was held on January 12, 2024. Neither a transcript nor a bystander's report is included in the record. On January 16, 2024, the court granted summary judgment to Zurich "for the reasons as stated in open court" including the fact that Sammak offered no admissible evidence to prove his claimed dental expenses were for medically necessary services or charges as defined by Zurich policy, from which the court could conclude there was a genuine issue of fact necessitating a trial. It also found that Zurich had no duty under the policy to pre-approve medical treatment as argued by Sammak to support his claim for additional treatment.

¶ 23     On February 9, 2024, Sammak moved the court to reconsider its grant of summary judgment to Zurich. He claimed that the document from the Istanbul Clinic "was in effect a paid receipt" and therefore should have been admitted into evidence. He also argued that the Istanbul Clinic document should have been admitted as a business record, and that his newly attached affidavit "cries loudly that the [Istanbul Clinic document] is authentic." In this affidavit, Sammak said that on June 29, 2021, he went back to the Istanbul Clinic and asked for a receipt after he paid the person working in the office $6500 for the dental surgery. She handed him a receipt and signed and stamped it in his presence. Sammak took that receipt and sent it to Zurich but never received written acknowledgement. Finally, Sammak argued that the Istanbul Clinic document should have been admitted as an admission against interest. He wrote, "[w]hen a creditor makes a statement that a bill is paid, this is credible as it is against his interest." He alternatively argued that if the court found the Istanbul Clinic inadmissible as a whole, then it should have redacted the exhibit to remove the medical opinions regarding causation to leave only those portions setting forth the

charges and the payment, making it admissible as "a paid bill." In addition, Sammak argued that Zurich breached its duty to approve or deny claims within a reasonable time. He argued that "the evidence shows that [Zurich] never admitted or denied liability for bills of Dr. Barr or for the bills of the dentist in Turkey." Finally, he argued that Zurich breached its duty of good faith and fair dealing.

¶ 24    In response, Zurich moved to strike Sammak's newly-filed affidavit, claiming it was not newly discovered evidence and that even if it was, Sammak was not competent to authenticate business records for the Istanbul Clinic. Zurich noted that medical records are only admissible "as long as a sufficient foundation is laid to establish that they are business records."

¶ 25    At the hearing on Sammak's motion to reconsider, he asked that the Istanbul Clinic document be admitted "as a paid receipt because paid receipts go into evidence. They're admissions against interest." He also said the court could redact the document so that only the portions referencing the payment made by Sammak be admitted. The court asked Sammak's counsel if he ever argued that the document should be admitted as a paid bill and that the document be redacted before summary judgment was granted. Counsel admitted that he had not. The court noted that this was a "new argument which [Sammak] could have raised at the time but didn't." It noted that "[a] motion to reconsider isn't an opportunity to revive an issue that should have been raised initially. That's the whole point." The court found that the Istanbul Clinic document was not admissible as a business record because it was not authenticated and that Sammak's affidavit "would never be adequate to have this document introduced as a business record since he can't possibl[y] establish that it was made at or near the time reflected by the entries, that it was in the ordinary course of business to make records of this type, or that this record was made in the ordinary course of business. And, in fact, reading the record makes it quite clear to me that it

doesn't meet any of those criteria." Moreover, the court found that even if the Istanbul Clinic document was admissible as a business record, it still wouldn't help Sammak survive summary judgment because Sammak "offered no admissible evidence to substantiate that his claimed dental expenses were medically necessary services or charges as defined in appliable policy."

¶ 26 In its May 17, 2024, order, the court denied Sammak's motion to reconsider "for the reasons stated by the Court." Sammak filed a notice of appeal on June 14, 2024. However, on February 7, 2025, we issued a summary order dismissing the appeal after finding there was no final and appealable order because Sammak's claim against US Pack was still pending. See *Sammak v. Zurich American Ins. Co.*, 2025 IL App (1st) 241256-U, ¶ 11. We noted that to appeal the circuit court's grant of summary judgment to Zurich, Sammak would need to obtain an order from the court with language indicating that there was no just reason to delay Sammak's appeal against Zurich. *Id.* On remand, Sammak moved and received the requisite Rule 304(a) language from the circuit court and promptly reappealed, challenging the court's grant of summary judgment to Zurich. Having confirmed our jurisdiction, we turn to the merits of Sammak's appeal.

¶ 27                                    II. ANALYSIS

¶ 28 A. Exclusion of the Istanbul Clinic Document and Sammak's Reconsideration Affidavit

¶ 29 Sammak argues that the circuit court erred when it failed to admit several documents he submitted, including the Istanbul Clinic document and the affidavit he filed in support of his motion for reconsideration.

¶ 30 The decision to admit or exclude evidence rests within the sound discretion of the trial court, and we will not disturb that decision on appeal absent an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). An abuse of discretion occurs when the trial court's ruling is

11

arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the court. *People v. Santos*, 211 Ill. 2d 395, 401 (2004).

¶ 31     First, Sammak argues that the Istanbul Clinic document should have been admitted as: (1) a business record; (2) a declaration against interest; or (3) a paid receipt, or that the court should have redacted the document so that only those portions pertaining to receipt of payment were admitted.

¶ 32     Sammak argues that Zurich waived any objection to the admission of the Istanbul Clinic document. However, in its motion for summary judgment, Zurich objected to the admission of any dental records, noting that "no dental records produced by [Sammak] in this lawsuit have been or can be authenticated as business records and are therefore inadmissible. Medical records and reports can be admissible only if a proper foundation has been laid." Therefore, Zurich properly preserved its objection.

¶ 33     In turn, Zurich argues that Sammak forfeited any arguments that the Istanbul Clinic document qualified as a business record, a paid receipt, a declaration against interest, or that it should have been redacted, because he raised these arguments for the first time in his motion for reconsideration or at the hearing on his reconsideration motion. Zurich notes that Illinois courts do not allow litigants "to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling." *Vantage Hospitality Group, Inc. v. Q. Ill. Development, LLC*, 2016 IL App (4th) 160271, ¶ 41 (quoting *Gardner v. Navistar International Transportation Corporation*, 213 Ill. App. 3d 242, 248 (1991)).

¶ 34     Sammak acknowledges that he did not argue that the Istanbul Clinic document was a business record or a declaration against interest, or that the document should have been redacted to make it admissible as a paid receipt before the court granted summary judgment to Zurich.

Therefore, we agree with Zurich that Sammak forfeited these arguments. See, *e.g., Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 39 (finding Evanston's arguments regarding prematurity, which "were fully available but were not raised at the time the dismissal orders were entered on its original and first amended complaints" were forfeited and therefore declining to consider them); *American Chartered Bank v. USMDS, Inc.,* 2013 IL App (3d) 120397, ¶ 13 ("Issues cannot be raised for the first time in the trial court in a motion to reconsider and issues raised for the first time in a motion to reconsider cannot be raised on appeal.")

¶ 35    As for his argument that the Istanbul Clinic document was admissible as a paid receipt, Sammak also acknowledges that his response to Zurich's summary judgment motion does not contain this argument, but asserts that "[w]hile there is no transcript for the original argument which resulted in the judge granting summary judgment in favor of defendant Zurich, [his] counsel recalls that orally he argued that as a paid receipt [the Istanbul Clinic document] should come into evidence." But the circuit court expressly stated at the hearing on Sammak's motion for reconsideration that Sammak's "argument about admitting the document for purposes of a paid bill *** could have been made and wasn't made at the time of the [summary judgment] hearing." It is the appellant's burden to present a sufficiently complete record on appeal. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.") Absent a transcript or bystander's report of the hearing on Zurich's motion for summary judgment that shows Sammak's

counsel raised his paid receipt argument, we must presume the record supports the circuit court's finding that Sammak did not raise this argument at the summary judgment hearing.

¶ 36     Next, Sammak argues that the circuit court abused its discretion when it refused to consider the affidavit he filed in support of his motion to reconsider. In this affidavit, Sammak attempted, for the first time, to lay a foundation for the Istanbul Clinic document, and further averred that he sent the document to Zurich. However, this evidence was available to Sammak when he filed his response to Zurich's summary judgment motion. As noted above, "[i]ssues cannot be raised for the first time in the trial court in a motion to reconsider." *American Chartered Bank,* 2013 IL App (3d) 120397, ¶ 13. Therefore, the circuit court did not abuse its discretion when it refused to consider Sammak's reconsideration affidavit.

¶ 37                            B. Summary Judgment

¶ 38                            1. Standard of Review

¶ 39     Sammak argues that the circuit court reversibly erred when it granted summary judgment to Zurich. We review a trial court's grant of summary judgment *de novo*. *Butkiewicz v. Loyola University Medical Center,* 311 Ill. App. 3d 508, 511 (2000). A grant of summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). While a plaintiff "need not prove his case during summary judgment," he "must present some evidentiary facts to support the elements of his cause of action." *Krueger v. Oberto*, 309 Ill. App. 3d 358, 367 (1999). Summary judgment is proper if the plaintiff cannot establish any one of the elements of the cause of action. *Williams v. Manchester,* 228 Ill. 2d 404, 417 (2008).

¶ 40                            2. Medically Necessary Services

¶ 41    Sammak argues that the circuit court erred when it granted summary judgment to Zurich, because a genuine issue of material fact exists regarding whether the injuries to his teeth arose out of the December 23, 2019, accident. Many of his arguments rely on the Istanbul Clinic document for support, which we find the circuit court properly excluded. However, Sammak argues that even without the Istanbul Clinic document, Dr. Barr's testimony—that it was "definitely possible" that Sammak's dental injuries were caused by his car accident—creates a genuine issue of material fact regarding causation.

¶ 42    To prove that Zurich had a duty to pay for any damage to his teeth, Sammak needed to submit evidence to show that (1) his injured teeth were his "sound natural teeth" and (2) the dental work he received was for medically necessary services arising out of the December 23, 2019, accident. In the affidavit he submitted before the summary judgment hearing, Sammak averred that he "had no dentures and no artificial teeth" before the accident on December 23, 2019. However, he submitted no evidence to prove that his teeth were "disease free," free from decay, and that they were "not more susceptible to injury than unaltered natural teeth" before the accident occurred. Moreover, the only witness Sammak disclosed to support his contention that he suffered dental injuries caused by the accident was Dr. Barr, and when Dr. Barr was asked if he knew "why [Sammak] lost his teeth or how he lost his teeth" he replied, "[Sammak] told me that he was in a car accident. That's the extent I knew about anything in the past. I was just looking at his mouth, how it was when he presented." Dr. Barr, who first saw Sammak almost two years after his accident, admitted that he did not know what Sammak's "mouth looked like prior to the date that [he] saw him," and said he could not say with certainty what caused Sammak to lose all of his teeth. Therefore, even if the dental invoices from Dr. Barr had been properly submitted to Zurich during the medical expense benefits period, Sammak's claim still could not survive summary

judgment, because he submitted no evidence to prove that he suffered an injury to his sound natural teeth arising out of his December 23, 2019, accident, a requirement for coverage under the policy.

¶ 43    Sammak alternatively argues that the circuit court erred when it granted summary judgment to Zurich, because a question of fact exists regarding whether Zurich was "exercising good faith and fair dealing" when it failed to approve or deny his requests for reimbursement for dental expenses in a timely fashion. But even if Zurich had delayed or failed to respond to Sammak's claims for reimbursement for dental treatment, Zurich would still be entitled to summary judgment, because Sammak failed to submit any evidence to show that the dental work he had done in Turkey was a "medically necessary service" as defined by the policy.

¶ 44                    3. Zurich's Failure to Preauthorize Treatment

¶ 45    Finally, Sammak argues that genuine issues of material fact exist as to whether Zurich denied him medically necessary treatment by "unreasonably refus[ing] to give assurances to various medical providers that bills *** would be paid." However, nothing in the policy obligated Zurich to preauthorize medically necessary services. Rather, the policy states, "this policy is not workers' compensation and does not require pre-authorization of a physician for covered services or treatment." See *Connecticut Specialty Insurance Co. v. Loop Paper Recycling, Inc.,* 356 Ill. App. 3d 67, 73 (2005) ("If the words of a policy are clear and unambiguous, they must be afforded their plain, ordinary and popular meaning. **** Unambiguous clauses within insurance contracts must be enforced according to their terms and courts should refrain from adopting interpretations resulting in distortions and creating ambiguities where none exist."). Moreover, Zurich's claims adjuster McDonald testified that he emailed Sammak's attorney on April 27, 2021, and informed him:

"[t]here is no pre-certification or authorization necessary for treatment under this plan. It will cover treatment that is medically necessary and related to Mr. Zaher Sammak's injury of 12-23-2019. [Zurich] do[es] not direct any medical treatment or authorize medical treatment. As long as Mr. Sammak is treating for injuries related to the [accident] it is covered under the Occupational Accident Policy."

Therefore, no genuine issues of material fact exist regarding the denial of payment for medically necessary services, as the policy did not require Zurich to preauthorize treatment.

¶ 46                                    III. CONCLUSION

¶ 47     For the foregoing reasons, we find that the circuit court did not abuse its discretion when it excluded the Istanbul Clinic document and his reconsideration affidavit, and that it properly granted summary judgment to Zurich. The circuit court's judgment is affirmed.

¶ 48     Affirmed.