(No. 74319.—

DIMPLE GILBERT, Special Adm'r of the Estate of Jack Gilbert, Deceased, Appellant, v. SYCAMORE MUNICIPAL HOSPITAL, Appellee.

*Opinion filed October 21, 1993.*

512

NICKELS, J., took no part.

Bernard R. Nevoral, Paul W. Pasche and David L. Cwik, of Bernard R. Nevoral & Associates, Ltd., of Chicago, for appellant.

Franklin C. Cook, of Freeport (Robert McWilliams, of Kostantacos, Traum, Reuterfors & McWilliams, P.C., of Rockford, of counsel), for appellee.

Steven E. Garstki and Stewart D. Stoller, of Stoller & Garstki, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE FREEMAN delivered the opinion of the court:

The question presented for review is whether a hospital can be found vicariously liable for the negligence of a physician who is not a hospital employee, but rather an independent contractor. We hold that a hospital may be vicariously liable in such a case under the doctrine of apparent authority.

## BACKGROUND

The record contains the following pertinent evidence. On April 8, 1981, defendant, Sycamore Municipal Hospital (hospital), in Sycamore, Illinois, was a full service,

acute care facility. The hospital's active staff consisted of 14 to 20 physicians including Irving Frank, M.D. Dr. Frank was a general practitioner.

Many of the hospital's active staff physicians practiced through professional associations. Dr. Frank was the founder and president of one such group, Kishwaukee Medical Associates, Ltd. (KMA). Five to eight physicians practiced through KMA.

The hospital considered its active staff physicians to be independent contractors. The hospital did not pay them any salary. The record shows, for example, that the hospital did not pay Dr. Frank any business expense, or pay his social security taxes, or provide him with insurance, vacation, or sick leave. The hospital did not control his diagnosis or treatment. Dr. Frank set his own fees, billed separately for services rendered, kept the profits and bore the losses from his practice, and determined his own work schedule, salary, vacations, and maximum absences.

Various practice areas in the hospital had a quality assurance review committee that would meet regularly to review cases, statistics, and medical treatment generally. (*E.g.*, an emergency room committee, an operating room committee, etc.) Committee members included active staff physicians, hospital employees, and a representative of hospital administration. If the hospital did not approve of a physician's conduct, a hospital representative would speak to the physician.

The hospital had a "call roster," but a physician association could have its own call roster. For example, if a patient asked for a KMA physician who was unavailable, then another KMA-designated physician would respond.

The hospital emergency room was not managed or operated by an outside independent contractor or a particular medical association. Rather, the emergency room was considered a hospital function. The hospital em-

ployed emergency room nurses and owned emergency room equipment. The hospital's emergency room committee reviewed emergency room treatment rendered by physicians.

Active staff physicians were scheduled to be on call in the emergency room. However, an assigned physician could arrange for a substitute. As with their relationship generally, the hospital considered active staff physicians assigned to the emergency room to be independent contractors. The physicians billed emergency room patients separately for their services. The hospital also billed emergency room patients, but not for the physician's services. Marty Losoff, the hospital administrator in April 1981, testified in a deposition that the behavior of emergency room physicians could affect the hospital's public relations. Losoff also testified that, to his knowledge, the hospital did not advise emergency room patients that emergency room physicians were not hospital employees but rather independent contractors.

On the morning of April 8, 1981, Jack Gilbert (decedent) suffered pain in his chest and left arm while lifting weights. At approximately 2:30 p.m., decedent arrived by ambulance at the hospital's emergency room. Upon arrival, decedent signed a consent form, prepared by the hospital, which stated in pertinent part:

> "The undersigned has been informed of the emergency treatment considered necessary for the patient whose name appears above and that the treatment and procedures will be performed by physicians and employees of the hospital. Authorization is hereby granted for such treatment and procedures."

Dr. Wassner, a KMA physician who was on call that day, asked Dr. Frank to cover the emergency room for that day. Decedent asked for Dr. Stromberg, a KMA physician. Since Wassner and not Stromberg was on call, an emergency room nurse telephoned Dr. Frank, who ar-

rived a few minutes later. Dr. Frank had never met decedent before that day.

Dr. Frank gave decedent several tests, which did not reveal any sign of heart disease or a heart problem. Dr. Frank prescribed pain medication for decedent and discharged him at 4:20 p.m. Later that evening, decedent died as a result of a myocardial infarction. An autopsy revealed the presence of heart disease at the time of his death.

Plaintiff, Dimple Gilbert, as special administrator of decedent's estate, brought a medical malpractice and wrongful death action against Dr. Frank (count I) and the hospital (count II). In count II, plaintiff alleged that the hospital, by its agents or employees, including Dr. Frank, negligently failed to perform various acts in relation to the diagnosis and treatment of decedent. Plaintiff subsequently settled with Dr. Frank, who is not a party to this appeal, but reserved her causes of action against the hospital.

The hospital moved for summary judgment. The hospital contended, *inter alia*, that it was not vicariously liable for Dr. Frank's alleged negligence because he was not the hospital's agent or employee. The circuit court of De Kalb County granted summary judgment in favor of the hospital. The appellate court, with one justice dissenting, affirmed. (233 Ill. App. 3d 372.) We allowed plaintiff's petition for leave to appeal (134 Ill. 2d R. 315(a)), and now reverse and remand for further proceedings.

## DISCUSSION

The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. (*Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 599.) Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).

In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) A triable issue precluding summary judgment exists where the material facts are disputed (*Ray*, 19 Ill. 2d at 599; *Barkhausen v. Naugher* (1946), 395 Ill. 562, 566), or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358). The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. However, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. *Pyne*, 129 Ill. 2d at 358; *Purtill*, 111 Ill. 2d at 240.

## Vicarious Liability

In its motion for summary judgment, the hospital argued that it could not be vicariously liable for the alleged negligence of Dr. Frank because he was not an agent or employee of the hospital. In Illinois, a hospital may be liable in a medical malpractice case on two distinct theories. First, the hospital may be liable based upon a principal-agent relationship between the hospital and the physician. Second, the hospital may owe a duty, independent of any relationship between physician and patient, to review and supervise the medical care administered to a patient. (*Rohe v. Shivde* (1990), 203 Ill. App. 3d 181, 198; *Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 550, citing *Darling v. Charleston Community Memorial*

*Hospital* (1965), 33 Ill. 2d 326.) In the present case, the appellate court correctly noted that the parties raise only the first of these theories on appeal.

In some decisions, the appellate court has held that a hospital is vicariously liable for the negligence of a physician who is the apparent agent of the hospital. (*Northern Trust Co. v. St. Francis Hospital* (1988), 168 Ill. App. 3d 270, 278-79; *Sztorc v. Northwest Hospital* (1986), 146 Ill. App. 3d 275, 278-79.) In other decisions, however, the appellate court has refused to hold a hospital vicariously liable based on an agency relationship unless the physician was an actual agent of the hospital. *Johnson v. Sumner* (1987), 160 Ill. App. 3d 173, 175; *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, 1015-16.

In the present case, the appellate court acknowledged that the *Northern Trust* and *Sztorc* decisions and decisions from the courts of several other States have held hospitals vicariously liable for the negligence of treating physicians based on the doctrine of apparent agency. However, relying on *Greene* and *Johnson,* the court was of the opinion "that the cases recognizing apparent agency in this context fail to take into account the unique nature of the relationships between physicians and patients and between physicians and hospitals especially in emergency situations." 233 Ill. App. 3d at 378.

The appellate court noted that the treating physician controls and directs an emergency room patient's treatment. The court reasoned that it was not realistic to expect hospital staff or administration to direct or control treatment of an emergency room patient, especially when split-second decisions are required. This factor, to the court, "demands recognition of the independent relationship between a hospital and an emergency room physician and militates strongly against extension of a hospital's vicarious liability to physicians who are not actual agents or employees of the hospital." The court also

noted that the application of the doctrine of apparent authority in this situation would violate the fundamental precept of tort law that the tortfeasor be liable to the injured party for damages resulting only from his or her conduct. (233 Ill. App. 3d at 378 (citing *Johnson*, 160 Ill. App. 3d at 175, and *Greene*, 147 Ill. App. 3d at 1015).) Based on this reasoning, the appellate court concluded "that a hospital may be held vicariously liable for the negligence of an emergency room physician only if the physician was an actual agent or employee of the hospital." 233 Ill. App. 3d at 378-79.

The decisions in *Greene, Johnson,* and the present case overlook two realities of modern hospital care. One reality involves the business of a modern hospital. In *Kashishian v. Port* (1992), 167 Wis. 2d 24, 481 N.W.2d 277, the Wisconsin Supreme Court observed:

> "[H]ospitals increasingly hold themselves out to the public in expensive advertising campaigns as offering and rendering quality health services. One need only pick up a daily newspaper to see full and half page advertisements extolling the medical virtues of an individual hospital and the quality health care that the hospital is prepared to deliver in any number of medical areas. Modern hospitals have spent billions of dollars marketing themselves, nurturing the image with the consuming public that they are full-care modern health facilities. All of these expenditures have but one purpose: to persuade those in need of medical services to obtain those services at a specific hospital. In essence, hospitals have become big business, competing with each other for health care dollars." *Kashishian*, 167 Wis. 2d at 38, 481 N.W.2d at 282.

Further, a major component of modern hospital business is the emergency room. As the Mississippi Supreme Court observed:

> "If they [emergency room physicians] do their job well, the hospital succeeds in its chosen mission, profiting fi-

nancially and otherwise from the quality of emergency care so delivered. On such facts, anomaly would attend the hospital's escape from liability where the quality of care so delivered was below minimally acceptable standards." *Hardy v. Brantley* (Miss. 1985), 471 So. 2d 358, 371.

Another reality of modern hospital care involves the reasonable expectations of the public. It has been observed:

"[G]enerally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there. Absent a situation where the patient is directed by his own physician or where the patient makes an independent selection as to which physicians he will use while there, it is the reputation of the hospital itself upon which he would rely. Also, unless the patient is in some manner put on notice of the independent status of the professionals with whom it might be expected to come into contact, it would be natural for him to assume that these people are employees of the hospital." (*Arthur v. St. Peters Hospital* (1979), 169 N.J. Super. 575, 583, 405 A.2d 443, 447.)

(Accord *Hardy*, 471 So. 2d at 371.) Further:

"Such appearances speak much louder than the words of whatever private contractual arrangements the physicians and the hospital may have entered into, unbeknownst to the public, in an attempt to insulate the hospital from liability for the negligence, if any, of the physicians." *Brown v. Coastal Emergency Services, Inc.* (1987), 181 Ga. App. 893, 898, 354 S.E.2d 632, 637, *aff'd* (1987), 257 Ga. 507, 361 S.E.2d 164.

We fully agree with these observations, which have been made by several courts. See, *e.g., Paintsville Hospital Co. v. Rose* (Ky. 1985), 683 S.W.2d 255, 257-58; *Capan v. Divine Providence Hospital* (1981), 287 Pa. Super. 364, 369, 430 A.2d 647, 649; *Mehlman v. Powell* (1977), 281 Md. 269, 274-75, 378 A.2d 1121, 1124.

The realities of modern hospital care raise a serious question regarding the responsibility of a hospital when a physician who is an independent contractor renders negligent health care. Can a hospital always escape liability for the rendering of negligent health care because the person rendering the care was an independent contractor, regardless of how the hospital holds itself out to the public, regardless of how the treating physician held himself or herself out to the public with the knowledge of the hospital, and regardless of the perception created in the mind of the public? We agree with the court in *Kashishian* that a hospital cannot always escape liability in such a case. *Kashishian*, 167 Wis. 2d at 39, 481 N.W.2d at 282.

The Wisconsin Supreme Court has concluded:

> "Consistent with this concept of the modern-day hospital facilities, a patient who is unaware that the person providing treatment is not the employee or agent of the hospital should have a right to look to the hospital in seeking compensation for any negligence in providing emergency room care. The fact that, unbeknownst to the patient, the physician was an independent contractor should not prohibit a patient from seeking compensation from the hospital which offers the emergency room care." (*Pamperin v. Trinity Memorial Hospital* (1988), 144 Wis. 2d 188, 207, 423 N.W.2d 848, 855.)

We join the many courts that have reached this conclusion. For lists of decisions, see *Kashishian*, 167 Wis. 2d at 40, 481 N.W.2d at 283; *Brown*, 181 Ga. App. at 896-97, 354 S.E.2d at 636; *Martell v. St. Charles Hospital* (1987), 137 Misc. 2d 980, 991-92, 523 N.Y.S.2d 342, 350.

We stress that liability attaches to the hospital only where the treating physician is the apparent or ostensible agent of the hospital. If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable. See

*Pamperin,* 144 Wis. 2d at 207 n.7, 423 N.W.2d at 855 n.7.

## Apparent Authority

We now discuss the theory under which a hospital may be held vicariously liable, in a proper case, for the negligence of independent-contractor physicians. The parties in the present case, and other courts that have addressed this issue, have relied on either section 429 of the Restatement (Second) of Torts (Restatement (Second) of Torts §429 (1965)) or section 267 of the Restatement (Second) of Agency (Restatement (Second) of Agency §267 (1958)) or both. See *Pamperin,* 144 Wis. 2d at 205-06, 423 N.W.2d at 854-55; *Martell,* 137 Misc. 2d at 992, 523 N.Y.S.2d at 350.

We do not deem it necessary at this time to adopt a special rule in this area. Rather, we conclude that Illinois case law sufficiently recognizes the realities of modern hospital care and defines the limits of a hospital's liability.

Illinois has long recognized the doctrine of apparent authority, which refers to a type of agency relationship. (2A C.J.S. *Agency* §§19, 20 (1972); 1 F. Mechem, Agency §§56, 57 (2d ed. 1914).) A principal will be bound not only by that authority which he actually gives to another, but also by the authority which he appears to give. Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. (*State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 431-32; *Faber-Musser Co. v. William E. Dee Clay Manufacturing Co.* (1920), 291 Ill. 240, 244.)

Where the principal creates the appearance of authority, the principal "will not be heard to deny the agency to the prejudice of an innocent party, who has been led to rely upon the appearance of authority in the agent." *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.* (1895), 157 Ill. 554, 565; accord *State Security Insurance Co.*, 145 Ill. 2d at 432; *Faber-Musser Co.*, 291 Ill. at 244-45; 1 F. Mechem, Agency §246 (2d ed. 1914).

Whether an agent is authorized to act is a question of fact. (*Barkhausen*, 395 Ill. at 566.) Whether a person has notice of the lack of an agent's authority, or is put on notice by circumstances, is likewise a question of fact. *Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1138, citing *Paine v. Sheridan Trust & Savings Bank* (1930), 342 Ill. 342.

It is true that the doctrine of apparent authority is more commonly applied in contract cases. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 439 (Ryan, J., dissenting).) However, it is settled that an apparent agency gives rise to tort liability where the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency. *Brown*, 181 Ga. App. at 897, 354 S.E.2d at 636, *aff'd*, 257 Ga. at 508-09, 361 S.E.2d at 166; Restatement (Second) of Agency §§265 through 267 (1958); W. Seavey, Law of Agency §90 (1964).

Therefore, we hold that, under the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital, regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor. The elements of the action have been set out as follows:

"For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence." *Pamperin*, 144 Wis. 2d at 207-08, 423 N.W.2d at 855-56.

Accord *Brown*, 257 Ga. at 509-10, 361 S.E.2d at 166-67; *Mehlman*, 281 Md. at 274-75, 378 A.2d at 1124.

The element of "holding out" on the part of the hospital does not require an express representation by the hospital that the person alleged to be negligent is an employee. Rather, the element is satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors. *Pamperin*, 144 Wis. 2d at 209-10, 423 N.W.2d at 856-57.

The element of justifiable reliance on the part of the plaintiff is satisfied if the plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician. The *Pamperin* court explained:

"We agree with these decisions that the critical distinction is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is looking to the hospital merely as a place for his or her personal physician to provide medical care. Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospi-

tal in reliance upon the fact that complete emergency room care—from blood testing to radiological readings to the endless medical support services—will be provided by the hospital through its staff." *Pamperin*, 144 Wis. 2d at 211-12, 423 N.W.2d at 857.

We now apply these principles to the record before us. Construing the evidence strictly against the hospital and liberally in favor of plaintiff, we conclude that a genuine issue of material fact exists as to whether Dr. Frank was an apparent agent of the hospital. When the decedent was brought to the hospital emergency room, he asked for Dr. Stromberg, a KMA physician. Decedent did not ask for Dr. Frank, who was not decedent's physician and who had never before met decedent. Rather, Dr. Frank was another KMA physician who merely happened to be covering the emergency room the day decedent was taken there. The hospital did not inform emergency room patients that emergency room physicians were independent contractors. Also, the hospital's treatment consent form, which decedent signed, stated that he would be treated "by physicians and employees of the hospital."

The record contains conflicting evidence as to both the hospital's "holding out" of emergency room care, and decedent's justifiable reliance that the emergency room care was provided by the hospital rather than by Dr. Frank or KMA specifically. At the least, reasonable persons might draw different inferences from the facts of record. Based on the record before us, we cannot say that the hospital's right to summary judgment is clear and free from doubt. Thus, we reverse the trial court's entry of summary judgment in favor of the hospital.

### Miscellaneous Issues

We note two additional arguments of the hospital.

The hospital argues that we should not consider the issue of apparent agency because plaintiff did not plead it. In her complaint, plaintiff alleged simply that Dr. Frank was an agent or employee of the hospital, rather than alleging specifically that Dr. Frank was an apparent agent of the hospital.

The appellate court rejected this argument. We agree with the appellate court's reasoning and result on this issue. 233 Ill. App. 3d at 376-77.

We lastly note the hospital's argument that, even if Dr. Frank was an apparent agent of the hospital, plaintiff's settlement with him extinguished her claim against the hospital. Defendant relies on this court's recent decision in *American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center* (1992), 154 Ill. 2d 347. In that case, this court held that where a plaintiff brings a *respondeat superior* claim against a principal, "any settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability." *American National Bank*, 154 Ill. 2d at 355.

The rule announced in *American National Bank* creates an inconsistency with this court's decision in *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298. In *Edgar County Bank*, this court held that a covenant not to sue an employee or agent that expressly reserves a plaintiff's right to seek recovery from a principal does not bar the plaintiff's *respondeat superior* action against the principal. *Edgar County Bank*, 57 Ill. 2d at 302 (relied on in *Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 29-30).

Although *American National Bank* holds that a plaintiff's settlement with an agent extinguishes the principal's vicarious liability, *Edgar County Bank* renews the principal's liability if the plaintiff's covenant not to sue the agent expressly reserves the plaintiff's right to seek recovery from the principal. Under such a

rule, it is fair to surmise that no covenant not to sue an agent will ever lack such an express reservation of rights against the principal.

In *Bristow v. Griffitts Construction Co.* (1986), 140 Ill. App. 3d 191, the appellate court acknowledged that this result appears to deny the employee the benefit of his covenant because he would remain liable to the employer for indemnification. However, the court concluded that such a result is permissible because the employee expressly agreed. (*Bristow*, 140 Ill. App. 3d at 193.) Thus, the rule announced in *Bristow* was that where a plaintiff brings a *respondeat superior* claim against a principal, the settlement of the plaintiff's claim against the agent extinguishes the plaintiff's claim against the principal, *if* the agreement does not expressly reserve the plaintiff's action against the principal. See Kandaras & Kelley, *New Developments in the Illinois Law of Contribution Among Joint Tortfeasors*, 23 Loy. U. Chi. L.J. 407, 425 (1992).

We cannot allow this "catch 22" to remain unreconciled. It is axiomatic that the settlement of disputes is to be encouraged. However, this court held in *American National Bank* that common law implied indemnity remains viable in quasi-contractual relationships involving vicarious liability. (*American National Bank*, 154 Ill. 2d at 354.) Thus, as the *Bristow* court observed, an agent would gain nothing for settling with a plaintiff unless the covenant not to sue the agent also extinguished the principal's vicarious liability. *Bristow*, 140 Ill. App. 3d at 198.

Accordingly, we hold that the rule announced in *American National Bank* that "any settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability" (*American National Bank*, 154 Ill. 2d at 355) stands regardless of whether the plaintiff's covenant not to sue the agent expressly

reserves the plaintiff's right to seek recovery from the principal. Cases holding to the contrary, such as *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, and *Stewart v. Village of Summit* (1986), 114 Ill. 2d 23, 29-30, are hereby overruled on this point.

We further conclude that the rule we announce today shall apply prospectively from the date of the filing of this opinion. Of course, this court has the inherent power to make its rulings prospective. A new rule or decision will be given prospective operation whenever injustice or hardship, due to justifiable reliance on the overruled decisions, would thereby be averted. *Elg v. Whittington* (1987), 119 Ill. 2d 344, 356-57 (and cases cited therein).

We find that the facts in the present case meet the general test for prospective application. (*Elg*, 119 Ill. 2d at 359.) Initially, today's decision overruled clear past precedent, *e.g., Edgar County Bank*. Also, the rule we announce today would not be thwarted by a prospective application. The purpose of the rule in *American National Bank* is to encourage settlements on the part of agents. In the present case, however, Dr. Frank has already settled. He agreed to plaintiff's reservation of rights against the hospital while he knew or should have known of the hospital's right of implied indemnity against him.

Finally, a balance of the equities clearly favors prospective application. Retroactive application of the rule we announce today would not greatly improve the hospital's position. Under the rule we announce today, Dr. Frank settles with plaintiff, which extinguishes the hospital's liability. Under the rule expressed in cases such as *Edgar County Bank*, Dr. Frank settles with plaintiff but the hospital remains liable due to the reservation of rights clause in the covenant not to sue Dr.

Frank. However, the hospital is indemnified by Dr. Frank. In either case, the hospital does not have to pay.

In contrast, retroactive application of the rule we announce today would be unfair to plaintiff and cause her a great hardship. In her covenant not to sue Dr. Frank, plaintiff expressly reserved her right to seek recovery from the hospital. A retroactive application would deprive plaintiff of a right which she purposely and legally retained. A balance of the equities clearly weighs in favor of a prospective application. See *Elg*, 119 Ill. 2d at 359.

We conclude that a prospective operation in this case will avert injustice and hardship on plaintiff's part, who justifiably relied on the law expressed in cases such as *Edgar County Bank*. Therefore, we hold that this decision will apply prospectively from the date of the filing of this opinion.

For the foregoing reasons, the judgments of the appellate court and the circuit court of De Kalb County are reversed, and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgments reversed;*
*cause remanded.*

JUSTICE NICKELS took no part in the consideration or decision of this case.